UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

MARTIN BOMBARD,                        :
                                       :
          Plaintiff,                   :
                                       :
     v.                                :    Case No. 2:13-cv-58
                                       :
RICHARD VOLP, BURLINGTON               :
POLICE DEPARTMENT, AND CITY            :
OF BURLINGTON,                         :
                                       :
          Defendants.                  :

## OPINION AND ORDER

Plaintiff Martin Bombard brings this action claiming that Burlington Police Officer Richard Volp's use of a Taser[1] constituted excessive force.  Defendants Volp, the Burlington Police Department ("BPD"), and the City of Burlington have moved for summary judgment and, in the event summary judgment is not granted, to bifurcate the trial.  For the reasons set forth below, the motion for summary judgment (ECF No. 25) is GRANTED in part and DENIED in part, the motion to bifurcate (ECF No. 27) is GRANTED, and the motion to stay discovery (ECF No. 27) is DENIED.  Defendants' pending motion for a protective order (ECF No. 38) and Bombard's motion for an extension of time (ECF No. 35) are GRANTED.

---

[1]  A Taser is an electronic weapon capable of firing wires tipped with a pair of barbed darts to deliver a paralyzing electric charge.  *See Bryan v. MacPherson*, 630 F.3d 805, 824 (9th Cir. 2010).

<u>Factual Background</u>

On the evening of July 29, 2011, plaintiff Martin Bombard went out for drinks with a friend at Rasputin's bar in Burlington, Vermont.  While at Rasputin's, Bombard encountered his sister, Cathleen.  Bombard consumed between three and five alcoholic beverages at the bar, and it is undisputed that he became intoxicated.

Daniel Soons was also at Rasputin's that evening with a group of friends.  At one point, Cathleen asked Soons to move away from the bar so that she could buy a drink.  Soons responded profanely.  Bombard overheard Soons speaking to Cathleen, moved toward him and told him he was out of line.  Bombard and Soons continued to exchange words until a bouncer asked Bombard to leave.

Bombard left Rasputin's voluntarily, but remained outside on Main Street for ten to fifteen minutes while waiting for Cathleen and his friend to exit.  Soons subsequently exited the bar with a group of friends and challenged Bombard to a fight.  Bombard responded, "Yes, let's go.  Let's do it right now."  Bombard and Soons then walked to City Hall Park, accompanied by Soons's friends.

Once at the park, Bombard punched Soons in the face and Soons fell to the ground.  Bombard has testified that, fearing retaliation from Soons's friends, he immediately fled through an

2

alleyway and onto Church Street, a pedestrian street in downtown
Burlington.  Bombard believed at the time that he was being
chased, but did not know the identity of the chaser.

Burlington Police Officers Richard Volp and Leanne Werner
were on the opposite side of Main Street from City Hall Park when
Bombard hit Soons in the face.  Officer Volp witnessed the punch,
and claims that he called to Bombard to "come here."  Volp Dep.
at 41-42.  Contrary to Bombard's testimony, Officer Volp contends
that Bombard did not flee the scene immediately, but instead
walked fifteen or twenty feet toward him in an aggressive manner,
then fled when he realized that Volp was a police officer.
Officer Volp pursued Bombard and claims to have yelled several
times for him to stop.  Bombard testified that he heard only
footsteps behind him.  Bombard Dep. at 69-73.

After exiting the alleyway, Bombard ran north on Church
Street, which was crowded with bystanders.  Officer Volp, still
in pursuit, aimed his Taser's laser site at the center of
Bombard's back.  Bombard disputes whether Officer Volp also
yelled "Stop, or I'll tase you."  Because the street was crowded,
Officer Volp determined that it was unsafe to shoot his Taser at
that moment.

Officer Volp claims that at one point in the chase, Bombard
turned toward him in an aggressive manner.  This behavior caused
Officer Volp to be concerned that Bombard posed a threat of

3

violence.  Bombard disputes ever turning around, or that he was even aware of Officer Volp's presence behind him.  Officer Volp also allegedly determined that given Bombard's intoxication and assault of Soons, any attempt to grab and subdue Bombard would pose a risk of injury to himself, Bombard, and bystanders. Bombard disputes whether Officer Volp made this precise assessment, as Volp stated in his Incident Report that he did not know whether Bombard was intoxicated.  ECF No. 28-4 at 2.

Officer Volp contends that he fired his Taser when Bombard turned to run again.  It is undisputed that Bombard and Officer Volp were approximately ten to fifteen feet away from each other when the Taser was fired.  One of the Taser probes hit Bombard in the head.  Bombard lost consciousness, fell to the ground, and hit the pavement face first.  The fall resulted in four broken teeth, multiple lacerations to his face, a concussion, and a wrist injury.

Officer Volp asserts that although he aimed for the center of Bombard's back, the probe may have struck Bombard in the head because as Bombard was turning to run, his body was in a semi-crouched stance.  Because Bombard disputes ever stopping and turning toward Officer Volp, he also disputes that he was in a semi-crouched position.  Bombard further disputes whether Officer Volp aimed for the center of his back.

During the time period relevant to this case, the Burlington

4

Police Department ("BPD") maintained a Use of Force Policy governing the use of Tasers and other police weapons.  The Use of Force Policy states that:

> A police officer is justified in using non-lethal force upon another person when, and to the extent that, he/she reasonably believes it necessary to arrest, detain or effect custody, or to defend himself/herself or a third person from what he/she reasonably believes to be the imminent use of non-deadly force.

With specific regard to a Taser, also known as an Electronic Control Device or ECD, the Policy provides that: "The ECD is designed as a tool to respond to threat levels, which place the Officer or other individuals in the threat of physical harm due to the actions and behaviors of a suspect.  The suspect must be actively aggressive and presenting a risk of injury to the Officer(s), him/herself or others."  Tasers are "not to be used in a punitive or coercive manner, and shall not be used to . . . gain compliance from passively resistant subjects."  BPD officers are required to obtain certification and training before they can be armed with Tasers.

Officer Volp was trained and certified, and receives annual Taser training.  The written certification test identifies the head as a "sensitive ECD target area[] of the body to be avoided."  Volp. Dep. at 29.  The test also specifies that running subjects are at "elevated risk."  *Id*. at 30.  Volp testified that he is familiar with these protocols, as well as with the BPD's Use of Force Policy.  The BPD reviewed Officer

Volp's use of force and concluded that it was justified.

The Complaint alleges that Officer Volp used excessive force in violation of the Fourth Amendment.  The constitutional claim is brought against Officer Volp, the BPD, and the City of Burlington.  The Complaint also brings state law claims of battery, intentional infliction of emotional distress, and negligence against Officer Volp.  For relief, Bombard seeks compensatory and punitive damages.

<u>Procedural Background</u>

Defendants have moved for summary judgment on all claims. Defendants followed their summary judgment motion with a motion to bifurcate trial and stay discovery.  The latter motion argues that Bombard's municipal liability claims against the BPD and City of Burlington should be tried separately from his claims against Officer Volp.  Defendants have also moved to stay discovery on the municipal liability claims, reasoning that such discovery will be unnecessary if the claims against Officer Volp are dismissed.

Bombard has opposed Officer Volp's motion for summary judgment.  As to the BPD and the City, Bombard claims that he has not yet received sufficient discovery responses, and has therefore moved for an extension of time in which to respond to their portion of the summary judgment motion.  Since filing the above-referenced motions, the parties have stipulated to stay

consideration of a portion of the summary judgment motion,
specifically, Defendants' argument that any constitutional
violation was not the result of an official policy or custom.
The parties also agreed that Bombard would withdraw his motion to
compel the discovery of excessive force complaints brought
against the BPD or the City within the last five years.  The
Court has granted the stipulated motion to stay, and the motion
to compel has been withdrawn.

Also pending before the Court is Defendants' motion for a
protective order in which they claim that Bombard may not obtain
police records from a particular deponent.

Discussion

I.   Defendants' Motion for Summary Judgment

A.   Legal Standard

Defendants have moved for summary judgment on all counts.
Summary judgment must be granted when the record shows there is
no genuine issue as to any material fact and the moving party is
entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.
"[A] party seeking summary judgment always bears the initial
responsibility of informing the district court of the basis for
its motion, and identifying those portions of 'the pleadings,
depositions, answers to interrogatories, and admissions on file,
together with the affidavits, if any,' which it believes
demonstrate the absence of a genuine issue of material fact."

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  In deciding the motion, the Court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party and deny the motion if a rational juror could decide in favor of that party under the applicable law.  *Scott v. Harris*, 550 U.S. 372, 378 (2007).

   B.   Excessive Force

   Bombard claims that Officer Volp's use of a Taser constituted excessive force in violation of the Fourth Amendment.  "The Fourth Amendment protects individuals from the government's use of excessive force when detaining or arresting individuals." *Jones v. Parmley*, 465 F.3d 46, 61 (2d Cir. 2006).  "Police officers' application of force is excessive . . . if it is objectively unreasonable 'in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'" *Maxwell v. City of New York*, 380 F.3d 106, 108 (2d Cir. 2004) (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)).

   Determining whether a use of force was "reasonable" under the Fourth Amendment "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (internal quotation marks omitted).  The Second Circuit has instructed district courts to consider "at least three factors" when "conducting that

balancing": "(1) the nature and severity of the crime leading to the arrest, (2) whether the suspect pose[d] an immediate threat to the safety of the officer or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010) (citing *Graham*, 490 U.S. at 396).

At the summary judgment stage, once the Court has determined the relevant undisputed facts and drawn all inferences in favor of the nonmoving party, the Court's determination of reasonableness is a pure question of law, and must be made from the "perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396 (citing *Terry v. Ohio*, 392 U.S. 1, 20-22 (1968)). The "calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396-97. "Given the fact-specific nature of the inquiry, granting summary judgment against a plaintiff on an excessive force claim is not appropriate unless no reasonable factfinder could conclude that the officer's conduct was objectively unreasonable." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 123 (2d Cir. 2004).

In this case there are significant disputes of fact, as

Bombard's version of events differs substantially from that of Officer Volp.  For summary judgment purposes, the Court must credit Bombard's assertion that he fled City Hall Park to escape from Soons's friends and that he was not running to avoid arrest.  Viewing the facts in Bombard's favor, the Court must also assume that he ran continuously prior to being shot by the Taser, that he did not turn around to aggressively face Officer Volp, and correspondingly, that the shot to his head was not the result of his being in a crouched position.

Viewing the facts from the perspective of a reasonable officer on the scene, the Court also accepts Officer Volp's testimony that he saw Bombard strike Soons and then escape through the alleyway toward Church Street.  It is undisputed that Officer Volp chased Bombard, and that he shot the Taser from approximately ten to fifteen feet away.  The record indicates that Officer Volp was not aware that Bombard was intoxicated.  Bombard disputes whether Officer Volp ever yelled to him to stop, or warned that he might be tased.

The factual disputes presented by these two versions of events are material.  First, there is the matter of Bombard's flight from City Hall Park.  Officer Volp's testimony has Bombard spotting the police, then turning and fleeing as though to avoid arrest.  Resisting or evading arrest is one of the factors a court must consider when assessing reasonableness.  *Graham*, 490

10

U.S. at 396   In Bombard's version, however, his flight occurred immediately after he struck Soons, with no acknowledgment of police presence.   Accepting Bombard's factual representations at this stage in the case, a question arises as to whether a reasonable officer, upon watching Bombard run immediately after hitting Soons, would have believed that Bombard was running away in order to escape arrest.

The Court must also consider the severity of Bombard's crime.  *See id.*  No facts are in dispute here: Bombard struck Soons in the face and knocked him to the ground.   The question before the Court is whether, in light of such conduct, it was reasonable to prevent Bombard's escape by use of a Taser shot to the head.

This Court has noted that a Taser is a "'serious intrusion into the core of the interests protected by the Fourth Amendment.'"  *Towsley v. Frank*, 2010 WL 5394837, at *8 (D. Vt. Dec. 28, 2010) (quoting *Mattos v. Agarano*, 590 F.3d 1082, 1087 (9th Cir. 2010); *see also Bryan*, 630 F.3d at 810 (describing use of a Taser as an "intermediate, significant level of force that must be justified by the governmental interest involved").   The type of Taser used by Officer Volp emits an electrical impulse which "instantly overrides the victim's central nervous system, paralyzing the muscles throughout the body, rending the target limp and helpless.   The tasered person also experiences an

11

excruciating pain that radiates throughout the body." *Bryan*, 630 F.3d 805, 824 (9th Cir. 2010) (citations omitted).

Balanced against this bodily intrusion is the fact that Bombard had just punched someone in the face. Under Vermont law, a person who enters into a "fight or scuffle . . . by mutual consent" is guilty of a misdemeanor punishable by "not more than 60 days" in prison or a $500 fine. 13 V.S.A. § 1023(b). A conviction for simple assault is punishable by up to one year in prison or a fine of not more than $1,000. *Id.* Accordingly, the offense in this case, although violent, was moderate under local law.

Defendants compare this case to *Patrick v. Moorman*, 855 F. Supp. 2d 392 (E.D. Pa. 2012), in which the plaintiff was chased by police and tased after robbing a bank. When assessing the seriousness of the criminal offense, the *Patrick* court characterized bank robbery as "a serious crime." 855 F. Supp. 2d at 401. The court also observed that "a reasonable officer could legitimately assume that one who robbed a bank — a customarily secure, usually well-populated institution — would have a greater willingness to use force than the average purse-snatcher . . . ." *Id.* at 402. That same assumption would be inappropriate here, where Bombard engaged in fisticuffs against a specific target; a crime which, if prosecuted, would likely constitute a misdemeanor with a relatively minimal punishment.

12

The Court next considers whether Bombard posed an "immediate threat to the safety of the officers or others." *Tracy*, 623 F.3d at 96.  From the officer's perspective, Bombard had just committed an assault and was fleeing the scene.  As noted above, whether he was fleeing arrest is a disputed question.  A reasonable factfinder could consider that Bombard did not engage in any further violence prior to his tasing, and was in fact fleeing in order to avoid such violence.  Although Officer Volp's version of events depicts Bombard as turning toward him in an aggressive matter, that fact is also disputed as Bombard claims to have been running continuously.  A reasonable factfinder could therefore conclude that Bombard did not pose the required threat, and that tasing him under those circumstances was unreasonable.

These facts stand in contrast to other recent Taser cases wherein summary judgment was granted against the plaintiff.  For example, in *MacLeod v. Town of Brattleboro*, 2012 WL 1928656 (D. Vt. May 25, 2012), *aff'd*, 548 F. App'x 6 (2d Cir. 2013), the suspect sped away from a traffic stop as police approached his car, traveled in excess of the speed limit on wet roads through several intersections including one with a red light, and came to a stop in a parking lot.  Upon exiting his car the suspect initially went to the ground, then stood up and defied repeated police commands for him to return to the ground.  One officer ultimately holstered his firearm, drew his Taser, yelled "Taser,

Taser, Taser," and tased the suspect.  Based upon these facts,
the Second Circuit concluded that "[r]ising from the ground
rather than submitting to arrest exacerbated a 'tense, uncertain,
and rapidly evolving' situation that threatened the lives of
officers, bystanders, and MacLeod himself."  *MacLeod*, 549 F.
App'x at 8 (quoting *Graham*, 490 U.S. at 397).

     In *Towsley v. Frank*, 2010 WL 5394837 (D. Vt. Dec. 28, 2010),
this Court granted partial summary judgment to an officer who
fired a Taser twice to subdue an arrestee.  The Court granted
summary judgment based upon the circumstances of the first Taser
shot, finding the shot reasonable because the suspect, a
convicted felon under the influence of narcotics, was
belligerent, threatened to flee by jumping out of a window, and
failed to comply with twenty-six direct orders to submit to
arrest.  *Towsley*, 2010 WL 5394837 at *7.  The Court concluded
that "[g]iven these facts, including Mr. Towsley's history of
violence, fleeing police, and resisting arrest, a reasonable
officer could have concluded that Mr. Towsley posed an imminent
risk of harm to the officers . . . ."  *Id.*  Summary judgment was
denied as to the second tasing, conducted after the suspect had
gone out the window and was lying injured on the concrete
sidewalk one story below.  *Id.* at *10.

     Here, the undisputed facts present no direct confrontation
with police as found in *MacLeod* and *Towsley*.  Nor is there

14

undisputed evidence that Bombard was either belligerent or non-
compliant with police orders.  Accepting Bombard's account, he
was never even aware that Officer Volp was chasing him.  His
escape from City Hall Park, unlike the dangerous drive-away in
*MacLeod*, was not by itself dangerous, and there is no indication
of a known criminal history.  Indeed, viewing the facts in a
light most favorable to Bombard, a reasonable factfinder could
conclude that Bombard did not present a sufficient threat of harm
to the public, the officer, or himself such that the use of a
Taser was justified.

A remaining factor for consideration is whether Officer Volp
reasonably believed that Bombard was actively avoiding or
resisting arrest by flight.  *Tracy*, 623 F.3d at 96.  As discussed
above, Bombard's initial exit from City Hall Park could
reasonably be viewed as an effort to avoid harm at the hands of
Soons's friends.  Officer Volp claims, however, that soon
thereafter he shouted to Bombard to stop and warned him of a
possible tasing.  Bombard denies Officer Volp's assertion,
claiming that he did not hear the warnings.

Defendants contend that a failure to hear a warning is
insufficient to create an issue of material fact as to whether
that warning was provided.  The Seventh Circuit has determined
that where a "plaintiff did not testify that warnings were not
given but only that he did not hear any warnings, [his] testimony

15

fails to contradict the officer's positive testimony that he warned [the plaintiff]," so that "the plaintiff's testimony that he did not *hear* any warnings fails to present a question of material fact as to whether the giving of the warnings was feasible and if in fact they were given." *Ford v. Childers*, 855 F.2d 1271, 1276 (7th Cir. 1988) (emphasis in original).  In *Ford*, the court upheld a directed verdict in favor of a police officer who had used deadly force to stop a bank robber.  The court found the officer's conduct "objectively reasonable" based upon the threat of serious harm, and further noted that warnings were issued before the officer fired his gun.  *Id.*

In this case, Bombard contends that the night in question was a "busy and crowded summer evening in Downtown Burlington, with approximately 150 people nearby and loud music playing." ECF No. 28-1 at 2 (Plaintiff's Statement of Contested Material Facts).  It is undisputed that he was ten to fifteen feet ahead of Officer Volp at the time of the shooting, and he claims to have been running.  Accordingly, even if the Court were to follow the Seventh Circuit's reasoning in *Ford* and accept that warnings were provided, a question remains as to whether it was reasonable for Officer Volp to believe that Bombard could hear the warnings. If, as Bombard's evidence suggests, such a belief was not reasonable, a finding of non-compliance would be unwarranted.

The Court also considers that, viewing the facts in

16

Bombard's favor, Officer Volp shot a non-aggressive, running suspect in the back of the head.  Taser training materials discouraged head shots and warned of an elevated risk of harm when shooting a running suspect.  While Officer Volp contends that the head shot was a result of Bombard's crouched position, Bombard counters that he was merely running away.  Accepting Bombard's version of the facts, a reasonable juror could conclude that a shot to the head was not "objectively reasonable at the time." *Amnesty Am.*, 361 F.3d at 123.

The United States Supreme Court has emphasized that there is no "easy-to-apply legal test in the Fourth Amendment context . . . [and that] in the end we must still slosh our way through the factbound morass of 'reasonableness.'" *Scott*, 550 U.S. at 383. In this case, the evaluation of Officer Volp's reasonableness hinges upon material facts that are currently in dispute.  To effectively determine the officer's reasonableness, a factfinder will thus be required to make credibility determinations, a task in which this Court may not engage at summary judgment. *See Scott v. Coughlin*, 344 F.3d 282, 289 (2d Cir. 2003).  Viewing the facts in a light most favorable to Bombard as the nonmoving party, the Court cannot conclude that Defendants are entitled to judgment as a matter of law on his Fourth Amendment excessive force claim, and their motion for summary judgment on that claim is DENIED.

17

C.   Qualified Immunity

Officer Volp has also moved for summary judgment on the basis of qualified immunity.  Even if it is determined that Officer Volp used excessive force, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  An assertion of qualified immunity requires a court to determine "(1) whether plaintiff has shown facts making out [a] violation of a constitutional right; (2) if so, whether that right was 'clearly established'; and (3) even if the right was clearly established, whether it was 'objectively reasonable' for the officer to believe the conduct at issue was lawful." *Gonzalez v. City of Schenectady*, 728 F.3d 149, 154 (2d Cir. 2013) (quoting *Taravella v. Town of Wolcott*, 599 F.3d 129, 133–34 (2d Cir. 2010)).

In general, whether qualified immunity applies to the conduct of a law enforcement officer is a question of law for the court to decide.  *Stephenson v. Doe*, 332 F.3d 68, 80–81 (2d Cir. 2003).  The determination "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  As the Supreme Court explained in *Saucier*, "[t]he contours of the right

18

must be sufficiently clear that a reasonable official would
understand that what he is doing violates that right." *Id.* at
201–02 (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

Courts in this circuit must determine clearly established
law based upon "Supreme Court and Second Circuit precedent
existing at the time of the alleged violation." *Moore v. Vega*,
371 F.3d 110, 114 (2d Cir. 2004) (citing *Townes v. City of New
York*, 176 F.3d 138, 144 (2d Cir. 1999)). Nonetheless, police
officers can "be on notice that their conduct violates
established law even in novel factual circumstances." *Hope v.
Pelzer*, 536 U.S. 730, 741 (2002). The Supreme Court recently
explained that "[w]e do not require a case directly on point, but
existing precedent must have placed the statutory or
constitutional question beyond debate." *Ashcroft v. Al-Kidd*, 131
S. Ct. 2074, 2083 (2011). If the Supreme Court and the Second
Circuit have not determined the precise contours of a right under
a given set of facts, that right may be clearly established if
the law is established in other circuits and the Second Circuit's
own decisions "foreshadowed the right." *Bailey v. Pataki*, 708
F.3d 391, 405 (2d Cir. 2013). Qualified immunity is an
affirmative defense, and the burden is on the officer to
establish it at summary judgment. *Id.* at 404.

The parties have not cited any cases with precisely the same
facts as those set forth here. In a recent unpublished Sixth

19

Circuit opinion, the court noted that qualified immunity cases

involving Tasers generally fall into one of two categories:

> The first involves plaintiffs tased while actively
> resisting arrest by physically struggling with,
> threatening, or disobeying officers.  In the face of
> such resistance, courts conclude either that no
> constitutional violation occurred, or that the right
> not to be tased while resisting arrest was not clearly
> established at the time of the incident. . . .

> In the second group of cases, a law-enforcement
> official tases plaintiff who has done nothing to resist
> arrest or is already detained.  Courts faced with this
> scenario hold that a § 1983 excessive-force claim is
> available, since the right to be free from physical
> force when one is not resisting the police is a clearly
> established right.

*Cockrell v. City of Cincinnati*, 468 F. App'x 491, 495–96 (6th

Cir. 2012) (internal quotation marks and citations omitted).  The

Second Circuit has observed this dichotomy in excessive force

cases generally, and in at least one Taser case specifically.

*Compare Tracy*, 623 F.3d at 99 (noting clearly established law

that pepper spray should not be used "lightly . . . against an

arrestee who is complying with police commands or otherwise poses

no threat to the arresting officer"), *with Crowell v.*

*Kirkpatrick*, 400 F. App'x 592, 595 (2d Cir. 2010) (summary order)

(concluding that use of Taser was reasonable where plaintiffs

"were actively resisting their arrest" and that officers were

entitled to qualified immunity).

In this case, questions of fact remain as to whether Bombard

was fleeing arrest, whether he should have heard Officer Volp's

warnings, or whether he ever acknowledged Officer Volp's presence.  As discussed previously, a reasonable factfinder could also conclude that Bombard did not present a danger to himself or others.  It is undisputed that Bombard was shot in the head.  If it was not reasonable for Officer Volp to believe that Bombard (1) presented a danger and (2) was resisting arrest, it is clearly established that he should not have utilized a Taser shot to the head to bring a running suspect into custody.  *See Tracy*, 623 F.3d at 98; *Grawey v. Drury*, 567 F.3d 302, 314 (6th Cir. 2009) ("a reasonable police officer would know that using pepper spray on a suspect who has submitted, is not resisting, and is no danger to anyone constitutes excessive force"); *Hadley v. Gutierrez*, 526 F.3d 1324, 1330 (11th Cir. 2008) (where plaintiff did not resist arrest and posed no danger, officer "was not entitled to use any force at that time").  It was also objectively unreasonable for Officer Volp to believe that his conduct was lawful.

"Summary judgment on qualified immunity grounds is not appropriate when there are facts in dispute that are material to a determination of reasonableness." *Thomas v. Roach*, 165 F.3d 137, 143 (2d Cir. 1999).  Here, the same factual disputes with regard to reasonableness on the constitutional claim bar summary judgment on the basis of qualified immunity.  *See Cowan ex rel. Estate of Cooper v. Breen*, 352 F.3d 756, 764 (2d Cir. 2003)

("Because in this case genuine, material, factual disputes overlap both the excessive force and qualified immunity issues, summary judgment must be denied."); *Breen v. Garrison*, 169 F.3d 152, 153 (2d Cir. 1999) (holding that issues of fact on reasonableness of force used preclude summary judgment on defense of qualified immunity).  The Court therefore declines to grant summary judgment on the basis of qualified immunity, and Officer Volp's motion for summary judgment is DENIED.

D.   State Law Claims

Officer Volp has also moved for summary judgment on Bombard's state law claims of battery, intentional infliction of emotional distress, and negligence.  Under Vermont law, battery is "an intentional act that results in harmful contact with another."  *Christman v. Davis*, 2005 VT 119, ¶ 6, 179 Vt. 99, 101, 889 A.2d 746, 749.  A "police officer is not liable for . . . battery based upon the officer's lawful arrest of a person, where there was no use of excessive force, unreasonable contact, or the threat of unreasonable contact by the officer."  *Crowell*, 667 F. Supp. 2d at 417 (quoting 6 Am. Jur. 2d *Assault and Battery* § 98 (2009).  Here, as in *Crowell*, the plaintiff's battery claims "essentially duplicate [his] excessive force claims."  *Id*. Because the questions of excessive force and reasonableness are matters for the jury in this case, the Court cannot grant summary judgment on the state law battery claim.

22

Intentional infliction of emotional distress "requires a plaintiff to establish 'outrageous conduct, done intentionally or with reckless disregard of the probability of causing emotional distress, resulting in the suffering of extreme emotional distress, actually or proximately caused by the outrageous conduct." *Cook v. Arrowsmith Shelburne*, 69 F.3d 1235, 1242 (2d Cir. 1995) (quoting *McHugh v. Univ. of Vermont*, 758 F. Supp. 945, 949 (D. Vt. 1991)).  A claim of intentional infliction of emotional distress must establish conduct that goes "beyond all possible bounds of decent and tolerable conduct in a civilized community." *Fromson v. State*, 2004 VT 29, ¶ 14, 176 Vt. 395, 399, 848 A.2d 344, 347 (citation omitted).

Once again, disputed issues of material fact bar a ruling on this claim.  Viewing the facts in Bombard's favor, Officer Volp shot him in the head while the two were running through the streets of Burlington.  A reasonable juror could find that Officer Volp should have known his warnings were not being heard, and that Bombard had no idea he was being chased by police.  If that same juror concluded that Bombard was shot while running and without warning, resulting in serious injuries, and that Bombard presented no danger to himself or others, the juror could also find that using an electrical charge to suddenly stop Bombard's forward progress was "outrageous."

Finally, Bombard asserts a claim of negligence.  "The

23

elements of common law negligence are: (1) defendants owed a
legal duty to protect plaintiff from an unreasonable risk of
harm; (2) defendants breached that duty; (3) defendants' conduct
was the proximate cause of plaintiff['s] injuries; and (4)
plaintiff[ ] suffered actual damage." *Knight v. Rower*, 742 A.2d
1237, 1242 (Vt. 1999).  In *MacLeod*, this Court concluded that a
Use of Force Policy may create a duty of care governing the use
of Taser.  2012 WL 5949787, at *10 (citing *Kennery v. State*, 2011
VT 121, ¶ 28, 191 Vt. 44, 58, 38 A.3d 35, 44; *Sabia v. State*, 669
A.2d 1187, 1192 (Vt. 1995)).

Here, the relevant Use of Force Policy states that an
officer may use force when he or she "reasonably believes" it
necessary to effect custody or to defend himself or a third
person from the imminent use of non-deadly force.  As discussed
above, the reasonableness inquiry in this case hinges upon
material facts that are currently in dispute, and are thus not
appropriate for a ruling at the summary judgment stage.
Furthermore, the BPD's Taser policy requires that the suspect be
"actively aggressive and presenting a risk of injury to the
Officer(s), him/herself or others."  Viewing the facts in a light
most favorable to Bombard, no such aggression or risk of injury
was present in this case.  Summary judgment on the negligence
claim is therefore unwarranted.

Defendants also urge the Court to apply qualified immunity

24

to the state law claims.  Under Vermont law, "lower-level government employees are immune from tort liability when they perform discretionary acts in good faith during the course of their employment and within the scope of their authority." *Hudson v. Town of E. Montpelier*, 638 A.2d 561, 564 (Vt. 1993). In *Crowell*, this Court noted that "to determine whether a state employee is acting in 'good faith,' Vermont law relies on the" federal standard for qualified immunity "and asks whether the Defendants' conduct violated clearly established rights . . . of which a reasonable person would have known."  667 F. Supp. 2d at 417 (quoting *Stevens v. Stearns*, 2003 VT 74, ¶ 15, 175 Vt. 428, 434, 833 A.2d 835, 841 (citation omitted)).  Just as Officer Volp is not entitled to qualified immunity on the constitutional claim, questions of fact prevent application of qualified immunity on the state law claims.  The motion for summary judgment on Bombard's state law claims is therefore DENIED.

E.   Claims Against the BPD

The BPD moves for summary judgment on the ground that it cannot be sued as an independent entity.  Under Fed. R. Civ. P. 17(b)(3), the Court looks to Vermont law to determine whether a governmental entity has the capacity to be sued.  The Court is not aware of any statute or ordinance in Vermont that permits a suit against a municipal police department, and has consistently held that such departments do not have the capacity to be sued.

*See, e.g., Gorton v. Burlington Police Dep't*, 23 F. Supp. 2d 454, 456 (D. Vt. 1998); *Hee v. Everlof*, 812 F. Supp. 1350, 1351 (D. Vt. 1993).  The BPD's motion for summary judgment is therefore GRANTED.

II.  Motion to Bifurcate and Stay Discovery on *Monell* Claims

     Defendants also move to bifurcate the trial such that Officer Volp would be tried first and the City of Burlington second.  Federal Rule of Civil Procedure 42(b) permits the Court to "order a separate trial of one or more separate issues" in the interest of "convenience, to avoid prejudice, or to expedite and economize."  The trial judge has great discretion to determine whether bifurcation is appropriate.  *Simpson v. Pittsburgh Corning Corp.*, 901 F.2d 277, 283 (2d Cir. 1990).  Bifurcation may be appropriate where "the litigation of the first issue might eliminate the need to litigate the second issue, or where one party will be prejudiced by evidence presented against another party."  *Amato v. City of Saratoga Springs*, 170 F.3d 311, 316 (2d Cir. 2000).

     Officer Volp claims that a trial with the City would include evidence of incidents involving other BPD officers, and that such evidence would prejudice his own case.  Defendants also contend that a verdict in favor of Officer Volp would resolve the claims against the City, thus making a trial against those defendants unnecessary.  Bombard counters that he should not be required to

26

introduce overlapping evidence in two separate trials.  In addition, Bombard submits that prejudice is not an issue because the Court can mitigate any risk of prejudice through jury instructions.

In *Amato*, a plaintiff sued two police officers for excessive force and also sued the municipality and several municipal officials.  170 F.3d at 312.  The district court granted a motion to bifurcate in the interest of efficiency and to avoid prejudice, reasoning first that a trial against city officials would prove unnecessary if the plaintiff did not prevail against the individual officers, and second that the individual officers would be prejudiced by evidence that the plaintiff planned to introduce against the city.  *Id.* at 316.  That evidence included personnel records and all claims of excessive force against the police department.  *Id.*  This case is similar, since if Bombard's claims against Officer Volp fail, his case against the City of Burlington will also fail.  *See, e.g., City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point.") (emphasis in the original); *accord Lee v. City of Syracuse*, 446 F. App'x 319 (2d Cir. 2011).

Courts in the Second Circuit generally "favor bifurcating

27

*Monell* claims." *Mineo v. City of New York*, 2013 WL 1334322, at
*1 (E.D.N.Y. Mar. 29, 2013) (citations omitted)).  In this case,
if the jury decides that Officer Volp did use excessive force,
Bombard will indeed be required to litigate a second time, and
will likely repeat evidence.  However, given that the claims
against the City may be moot after the jury resolves the first
constitutional question, and that evidence of five years of
excessive force claims against Burlington police officers would
likely prejudice Officer Volp's efforts to defend his specific
actions, the motion to bifurcate is GRANTED.

As to the motion to stay discovery, the procedural history
of the case suggests that Bombard is still pursuing documentation
pertaining to municipal liability.  Although the Court has
decided to bifurcate the trial in this case, it sees no need at
this time to delay discovery with regard to the City.  The motion
to stay discovery is therefore DENIED.

III. Motion for Protective Order

The final matter pending before the Court is Defendants'
motion for a protective order.  This motion arises out of a
subpoena *duces tecum* issued for Officer Jason Bellavance in which
Bombard requests reports and claims of excessive force, assault
and battery, and/or civil rights violations brought against BPD
officers within the last five years.  Defendants argue that
Officer Bellavance is not the custodian of such records, and that

28

production under Fed. R. Civ. P. 45 is therefore unauthorized.
Defendants also note that although Bombard cites Fed. R. Civ. P.
30(b)(6), Rule 30(b)(6) requires the requesting party to name the
government agency itself, and allows the agency to then "identify
the person who is best suited to answer questions about the
matter."  8A Charles Alan Wright, Arthur R. Miller & Richard L.
Marcus, *Federal Practice and Procedure* § 2103 (3d ed. 2010).
Bombard counters that Defendants failed to timely object to the
notice of deposition, and that they are not entitled to a
protective order under Fed. R. Civ. P. 26(c).

Rule 26(c) protects against "annoyance, embarrassment,
oppression, or undue burden or expense," and requires a showing
of good cause for a protective order to be issued.  Fed. R. Civ.
P. 26(c).  A district court has discretion to decide when a
protective order is appropriate and what degree of protection is
required.  *See Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36
(1984).  "In deciding whether good cause exists, the district
court must balance the interests involved: the harm to the party
seeking the protective order and the importance of disclosure" to
the non-moving party.  *Wiggins v. Burge*, 173 F.R.D. 226, 229
(N.D. Ill. 1997) (citations omitted).

Here, the only objection is to the production of records
that are not in Officer Bellavance's control.  As Bombard appears
to have other avenues for obtaining such records, such as a Rule

29

30(b)(6) notice or subpoena, imposition of a protective order will merely redirect, rather than inhibit, his discovery efforts. Moreover, Officer Bellavance's legal objections to the subpoena *duces tecum* are valid.  Accordingly, the Court finds that Defendants have shown good cause and the motion for a protective order is GRANTED.  Officer Bellavance will not be compelled to produce documents that are not within his possession, custody, or control.

Conclusion

For the reasons set forth above, Defendants' motion for summary judgment (ECF No. 25) is GRANTED with respect to the Burlington Police Department and is otherwise DENIED. Defendants' motion to bifurcate (ECF No. 27) is GRANTED, and their motion to stay discovery (ECF No. 27) is DENIED. Defendants' pending motion for a protective order (ECF No. 38) and Bombard's motion for an extension of time (ECF No. 35) are GRANTED.

Defendants' motion for summary judgment with respect to the City of Burlington, previously stayed, is now DENIED without prejudice to re-filing once discovery with respect to the City has been completed.  The parties shall confer and file a stipulated revised discovery schedule for this now-bifurcated case on or before October 6, 2014.

30

Dated at Burlington, in the District of Vermont, this 8th day of September, 2014.

/s/ William K. Sessions III
William K. Sessions III
United States District Judge